UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ROBIN L. BRANDENBURG, | ) | No. SA CV 09-00277-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") properly

considered the opinion of the treating psychiatrist;

2. Whether the ALJ properly considered a mental impairment;

3. Whether the ALJ properly considered the lay evidence;

4. Whether the ALJ properly considered Plaintiff's testimony.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY EVALUATED THE OPINION**

**OF PLAINTIFF'S TREATING PHYSICIAN, DR. NOYES**

In Plaintiff's first issue, she contends the ALJ failed to properly consider the opinion of Dr. Noyes, her treating psychiatrist. (JS at 3, et seq.) Specifically, Plaintiff focuses upon an October 27, 2006 document ("Confidential Supplemental Psychiatric Evaluation") in which Dr. Noyes assesses that due to the "incapacitating nature" of her [mental] condition, Plaintiff should be deemed disabled and granted Social Security SSI benefits. (Id.)

**A.   The ALJ's Decision**.

The ALJ reviewed Dr. Noyes' opinion in conjunction with Plaintiff's treatment record, which documents excessive use of alcohol and street drugs, commencing in 2001. (AR 21-24.) She summarized Plaintiff's progress notes from 2001 through 2004, which indicate continued use and abuse of alcohol and drugs. (AR 22.) The ALJ noted that in April 2005, Plaintiff was admitted to the hospital with disorganized behavior. The hospital Discharge Summary notes a

2

"history of non-compliance with medications," and incorporates Plaintiff's admission that she consumes six beers daily, and uses numerous street drugs. (AR at 22, citing AR at 209-10.) Upon discharge, she was alert and oriented, cooperative with the interview, made good eye contact, had no evidence of psychomotor agitation, had speech within normal limits, and her cognition was grossly intact, with linear thought process. She denied having delusions, her mood was euthymic, her affect constricted, and her insight and judgment were fair. (AR 210.)

A month later, in May 2005, Plaintiff was again hospitalized because of her drug abuse. She was using a variety of narcotics (e.g., LSD, methamphetamines) in addition to alcohol, and was diagnosed with a substance-induced mood disorder. (AR 22, 204.)

On May 26, 2005, Plaintiff was hospitalized due to destabilization of her condition secondary to methamphetamine abuse. She claimed audio and visual hallucinations and paranoid delusions. She was stabilized and discharged with no restrictions, but told to avoid alcohol and drugs. (AR 22, 254.)

In June, 2005, Dr. Noyes noted that Plaintiff was "doing better on her medications[,] no anxiety depression has significantly decreased in the last month." (AR 279.) The ALJ noted Dr. Noyes' observations that Plaintiff had normal motor activity; only slightly distracted concentration; intact memory; appropriate affect; no hallucinations since her hospitalization the month before; that her ability to understand, remember and carry out complex instructions, perform activities within a schedule and maintain attendance, and respond appropriately to change in the work setting was good; her ability to understand, remember and carry out simple instructions was

3

unlimited; her ability to maintain concentration, persistence and pace, and complete a normal work day and work week without interruptions from psychologically based symptoms was fair. (AR 22, 279-281.

In July 2005, the State Agency psychiatrist, based upon his review of the record evidence, concluded that Plaintiff was moderately limited in her ability to understand, remember and carry detailed instructions, and interact appropriately with the general public, but could perform simple repetitive tasks in a non-public setting. (AR 22, 282-290.)

Dr. Noyes prepared a "Confidential Supplemental Psychiatric Evaluation" on October 27, 2006. (AR 332-333.) The document was summarized by the ALJ, who noted Dr. Noyes' statements that Plaintiff required in-patient and out-patient treatment; that she should be granted disability benefits due to the incapacitating nature of her medical condition. (AR 23.) In this letter, Dr. Noyes asserted the "cycling nature of her illness with psychosis," a characterization which has been reiterated by her counsel. (AR 332.) Dr. Noyes referred back to Plaintiff's May 2005 hospitalization, but failed to note her long history of substance abuse which precipitated that hospitalization. The ALJ further commented that Dr. Noyes failed to mention Plaintiff's long history of medication non-compliance, noting that she is currently compliant. The ALJ characterized Dr. Noyes' statements as inconsistent with earlier statements he had made after her hospitalization "in which he indicated substantial improvement on medication and abstinence from drugs and alcohol." (AR 23.)

Finally, Dr. Noyes completed a "check-off" form entitled "Mental

4

Assessment" on October 25, 2006. (AR 23, 314-316.)[1]  Here, Dr. Noyes indicated that Plaintiff has marked limitations in numerous mental functional abilities.  The ALJ believed that this assessment "would suggest the claimant was a complete invalid requiring institutionalization." (AR 23.)  The ALJ found this report to be in "stark contrast" to Dr. Noyes' progress notes in which he reported Plaintiff was feeling good, sleeping well, and taking college courses. (Id., AR 319.)

Finally, the ALJ noted that at the hearing, a medical expert ("ME") testified regarding Plaintiff's mental condition, and found that Plaintiff had organic mood disorder with bipolar features, personality disorder, NOS, and history of substance abuse, in remission since June 2005.  The ME concluded that before June 2005, Plaintiff was non-functional secondary to a long-standing history of drug and alcohol abuse. As of June 2005, when Plaintiff stopped using drugs and alcohol, the ME opined that Plaintiff no longer met or equaled any listing (Appendix I to subpart P of Regulations), and that, as of June 1, 2005 (and prior to June 1, 2005 absent drug and alcohol abuse), Plaintiff could perform moderately complex tasks of 4-5 steps, in a habitual setting, with no safety operations, no hazardous machinery, and no intense interpersonal interactions as a necessary part of the job. (AR 23.)

The ALJ's findings were that Plaintiff's organic mood disorder with bipolar features, personality disorder, NOS, a history of substance abuse, in remission since June 2005, were considered severe at Step Two of the sequential evaluation process. (AR 25.)  Further,

---

[1] The date is incorrectly noted by the ALJ as February, 2007.

before June 1, 2005, Plaintiff's drug and alcohol abuse met Listing 12.09, but as of June 1, 2005, her medically determinable impairments did not meet or medically equal one of the Listing impairments. (AR 26.)  Further, the ALJ found that as of June 1, 2005, and prior to June 1, 2005 absent drug and alcohol abuse, Plaintiff's residual functional capacity ("RFC") enabled her to perform moderately complex tasks up to 4-5 steps in a habitated work setting, with no intense interpersonal interactions as a requirement of the job. (Id.)

**B.   Applicable Law**.

   **1.   Effect of Alcohol and Drug Abuse**.

If drug addiction or alcoholism is a contributing factor material to the determination of disability, a claimant will be found ineligible for disability benefits. (See 42 U.S.C. §423(d)(2)(C), 20 C.F.R. §416.935).  The procedural route outlined in the regulation requires an examination of "whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . . [that is] whether we would still find you disabled if you stopped using drugs or alcohol." (20 C.F.R. §416.935(a)(b))  Thus, it is required that a determination be made as to which of the claimant's physical, or in this case, mental limitations would remain, absent use of drugs or alcohol, and to then determine whether any or all of the remaining limitations would be disabling. (See 20 C.F.R. §416.935(b)(2)).

In making this particular determination, the ALJ's evaluation of evidence is governed by the same standards which apply to all social security cases. Pertinent regulations include 20 C.F.R. § 416.927(d), which provides that certain issues are reserved to the Commissioner

because they constitute administrative findings. Within this realm are opinions that a claimant is disabled. The regulation states, in pertinent part, that "a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §927(d)(1). Moreover, it is the Commissioner's responsibility to evaluate all relevant evidence to determine whether the opinion of the medical source is supported by the evidence, and whether it is consistent with the record as a whole. (See 20 C.F.R. §416.927(d)(3),(4)). In the vast majority of cases, there will be conflicts in the evidence, and it is the ALJ's specific responsibility to evaluate the evidence, and to resolve any such ambiguities or conflicts. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

### 2. **Evaluation of Opinions of Treating Physicians**.

The Ninth Circuit has repeatedly reaffirmed the principle that greatest weight is ordinarily given to the opinions of treating physicians versus those physicians who do not treat:

> "We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

Even so, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Id., citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.

7 (9th Cir. 1989)  The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, <u>Id</u>., citing <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir. 1986). However, if the ALJ chooses to do so, the ALJ must '"'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"' <u>Id</u>., citing <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987), quoting <u>Sprague</u>, 812 F.2d at 1230; <u>see also</u> <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983).

This clearly articulated rule, set forth by the Circuit in its opinions in <u>Magallanes</u> and <u>Cotton</u>, has been often cited in later decisions. (<u>See</u>, <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995): "The ALJ may reject the opinion only if she provides clear and convincing reasons that are supported by the record as a whole."; <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995): "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." (Citation omitted).

Moreover, the Ninth Circuit has established specific requirements in situations where the ALJ (as in this case) rejects the opinions of treating or examining physicians in favor of the opinion of a non-treating, non-examining medical expert. The rule is succinctly stated in <u>Morgan v. Apfel</u>, 169 F.3d 595, 602 (9th Cir. 1999):

> "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. (citations omitted)  In <u>Gallant</u> [<u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)], we determined

1       that 'the report of [a] nontreating, nonexamining physician,
2       combined with the ALJ's own observation of [the] claimant's
3       demeanor at the hearing,' did not constitute substantial
4       evidence and, therefore, did not support the Commissioner's
5       rejection of the examining physician's opinion that the
6       claimant was disabled.  Gallant, 753 F.2d at 1456.  In
7       Pitzer [Pitzer v. Sullivan, 908 F.2d 502 (9th Cir. 1990)],
8       we held that the nonexamining physician's opinion 'with
9       nothing more' did not constitute substantial evidence.

10              But we have consistently upheld the Commissioner's
11      rejection of the opinion of a treating or examining
12      physician, based *in part* on the testimony of the
13      nontreating, nonexamining medical advisor. [citations
14      omitted]  In Magallanes [Magallanes v. Bowen, 881 F.2d 747
15      (9th Cir. 1989)], evidence that supported the ALJ's
16      determination included, among other things, testimony from
17      the claimant that conflicted with her treating physician's
18      opinion." [citation omitted]
19 (169 F.3d at 602)

20      Also instructive is the Ninth Circuit's discussion of this issue
21 in Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995):

22              "Where the opinion of the claimant's treating physician
23      is contradicted, and the opinion of a nontreating source is
24      based on independent clinical findings that differ from
25      those of the treating physician, the opinion of the
26      nontreating source may itself be substantial evidence; it is
27      then solely the province of the ALJ to resolve the conflict.
28      Magallanes, 881 F.2d at 751.  Where, on the other hand, a

1 nontreating source's opinion contradicts that of the
2 treating physician but is not based on independent clinical
3 findings, or rests on clinical findings also considered by
4 the treating physician, the opinion of the treating
5 physician may be rejected only in the ALJ gives specific,
6 legitimate reasons for doing so that are based on
7 substantial evidence in the record. Id. at 751, 755. See
8 Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993)
9 (applying test where ALJ relied on contradictory opinion of
10 nonexamining medical advisor)."
11 (53 F.3d at 1041)

**C.  Analysis**.

The Court does not agree with Plaintiff's contention that the ALJ failed to consider the opinion of her treating physician, Dr. Noyes. Indeed, Dr. Noyes rendered several opinions over a period of time concerning Plaintiff's mental condition, all of which were discussed in the Decision. Dr. Noyes' opinion that Plaintiff is disabled is not entitled to controlling consideration by the Social Security Administration. As discussed in the Court's recitation of applicable law, the decision concerning disability is ultimately that of the Commissioner. What is significant here, however, is that the ALJ noted that Dr. Noyes' 2006 and 2007 opinions were in marked contrast to his 2005 opinions, rendered at a time when Plaintiff had been hospitalized, was compliant with her medications, and was off drugs. At that time, Dr. Noyes opined that these factors were material to Plaintiff's mental health, which in fact appeared to be quite good under those circumstances. Indeed, in the check-off form completed by

Dr. Noyes, he assessed numerous marked limitations in Plaintiff's mental functioning, which the ALJ noted were simply not supported by Dr. Noyes' own progress notes, by Plaintiff's activities of daily living ("ADL"), or by any of the medical records.  Simply put, Dr. Noyes' assessment was not consistent with the record as a whole, and the ALJ performed her appropriate function in evaluating this evidence as part of the entire record.  See also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)(an ALJ may discount the medical source's opinion where it is contradicted by other observations and opinions of the same source regarding a claimant's capabilities).  Thus, while Dr. Noyes assessed Plaintiff as having a "cycling" type of mental illness, the ALJ was not bound to accept that characterization, and her assessment that it conflicted with Dr. Noyes' prior evaluations of Plaintiff's improvement while she was abstinent from drugs and alcohol, and compliant with her medications, is based on substantial evidence in the record.  Indeed, as the ALJ noted in his determination of Plaintiff's credibility (see, infra), Plaintiff's ADL indicated that she had attended college off and on for two years starting in 2005; worked for five years in various pizza parlors; traveled to Scotland; drove a car, and was just about to start a new job. (AR 24, 457-459, 461, 467.)

   The ALJ also justifiably relied upon the testimony of the ME, who had reviewed the longitudinal record, and who opined that Plaintiff's drug and alcohol abuse was material to the assessment of her disability prior to June 2005. (AR 467-469.)

   This, while Plaintiff would appear to argue that her past drug and alcohol abuse are not relevant to the evaluation of her disability, this is a position not well supported by the evidence in

the record. This Court cannot find that the ALJ's determination to the contrary is unsupported by substantial evidence, and therefore, the Court will decline to find error as to Issue No. 1.

## II

### THE ALJ PROPERLY EVALUATED PLAINTIFF'S MENTAL IMPAIRMENT

Although Plaintiff has framed this issue as whether the ALJ properly considered her mental impairment, the specific discussion concerns the ALJ's reliance upon the testimony of the ME. (See JS at 16, et seq.) Indeed, the question of Plaintiff's mental impairment is raised in the first issue, which the Court has already extensively discussed. Now, Plaintiff asserts that the ALJ should not have relied upon the ME's evaluation of Plaintiff's mental functional capacity, because he assertedly provided no basis for his opinion in the record.

The ME's testimony with regard to Plaintiff's mental impairment has already been summarized in the Court's discussion of the first issue. It is clear from a review of the ME's testimony, in particular his testimony under cross-examination by Plaintiff's attorney at the hearing (AR 470-479) that the ME reviewed the entire longitudinal record concerning Plaintiff's mental impairments, its relationship to her prior alcohol and substance abuse, and her non-compliance with medications. In addition, the ME was present during Plaintiff's testimony at the hearing, where she indicated she was living with her friends, beginning a new job and hoped to begin classes again. (AR 457-458, 462-465.) Beyond that, the progress notes of Plaintiff's treating psychiatrist, Dr. Noyes, are part of the record, and were clearly considered by the ME in formulating his opinion that Plaintiff is not disabled, and has the mental functional capacity to perform

work. While the October 25, 2006 Mental Assessment of Dr. Noyes, and his Confidential Supplemental Psychiatric Evaluation Statement, dated two days later, set forth an opinion of marked mental limitations in many relevant areas, and a conclusion of disability based on these limitations, both the ALJ and the ME clearly rejected these conclusions as inconsistent with the substantial number of progress notes following Plaintiff's hospital discharge in 2005, which indicate essentially normal functioning in most areas of living, with just a few setbacks in that two-year period. (See AR at 361, 363, 350.)

In response to Plaintiff's argument, then, that the ME simply had no basis on which to formulate his conclusions, the Court must disagree, finding that the evidence in the record provides a substantial basis for the ME's opinion. Consequently, the Court finds no merit as to Issue No. 2.

### III

**THE ALJ PROPERLY CONSIDERED THE TESTIMONY OF PLAINTIFF'S MOTHER**

At the hearing, testimony was taken from Plaintiff's mother. (AR 492-500.) In the decision, the ALJ noted that, while this testimony was compelling, it is of little probative value and given little weight because of its subjectivity. (AR 24.) Plaintiff challenges the adequacy of this finding in her third issue.

First, it is apparent that the ALJ did consider, but then rejected, this testimony. (AR 24.) Plaintiff correctly notes that an ALJ may not ignore lay witness testimony, citing applicable cases which need not be restated here. Such testimony may only be rejected, however, if an ALJ provides reasons which are germane to that particular witness's testimony. See Dodrill v. Shalala, 12 F.3d 915,

918 (9th Cir. 1993).

Here, much of the testimony of Plaintiff's mother regarding her observations of her daughter predated the crucial 2005 period when Plaintiff's condition improved. Plaintiff last lived with her mother in the fall of 2005. (AR 492.) Indeed, Plaintiff's mother testified that with Plaintiff living separately from her, their relationship was much improved. (AR 492-494.) Plaintiff's mother observed that due to a change in Plaintiff's medication regimen, she has substantially improved in her functioning. (AR 496.)

Plaintiff's mother also indicated that her appearance and mood had improved with the change of medications, although she believed Plaintiff still hears voices from time to time. (AR 500.) This corroborates Dr. Noyes' notes which reflect such an incident in August 2006, but Dr. Noyes was able to resolve these symptoms. (AR 355-361.)

While Plaintiff's mother indicated that she believed her daughter was unable to work, the fact is that Plaintiff did work for much of the time. (AR 353, 386, 458, 460, 480.) In addition, although Plaintiff had problems periodically with school attendance and success, she did in fact attend school on an off-and-on basis throughout this period of time. (AR 318-319, 328, 355, 361, 368, 372, 376, 457.) Thus, Plaintiff's mother's opinion that she was incapable of working was properly rejected by the ALJ, since it conflicted with both the medical evidence, and with the fact that Plaintiff had been employed numerous times during this relevant period.

Although the ALJ's rejection of Plaintiff's mother's testimony is only briefly articulated in the Decision, primarily on the basis that it is subjective, any error must be considered harmless, because the outcome of the case would not be otherwise affected. See Stout v.

1  Commissioner, 454 F.3d 1050, 1054-57 (9th Cir. 2006.)
2       For the foregoing reasons, the Court finds no error in the ALJ's
3  evaluation of this lay witness testimony.

**IV**

**THE ALJ DID NOT ERR IN HER EVALUATION OF PLAINTIFF'S**

**CREDIBILITY WITH REGARD TO HER SUBJECTIVE SYMPTOMS**

In her final issue, Plaintiff asserts that the ALJ erred in her determination of Plaintiff's credibility. The ALJ concluded Plaintiff is not fully credible "regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitations." The ALJ concluded that Plaintiff had not established an impairment independent of her drug and alcohol abuse which would reasonably be expected to produce such symptoms. The Court agrees here with Plaintiff's argument that in finding that Plaintiff does have severe impairments of organic mood disorder with bipolar features and personality disorder, NOS, these may be considered impairments which could support Plaintiff's claims. The fact is, however, that these impairments, and Plaintiff's subjective symptoms, are highly intertwined with the impact of drug and alcohol abuse, which the ALJ properly considered. In any event, while the ALJ did not recite each and every activity in which Plaintiff engages in order to determine credibility, she did make note of the progress notes of Dr. Noyes, which set forth many of these activities. Thus, while Plaintiff claimed that she missed classes because she had anxiety (AR 454), her reports to Dr. Noyes were generally that school was going satisfactorily, and that she intended to continue taking classes. (AR 318, 328, 355, 368, 372, 376.) Further, as the Commissioner notes, while Plaintiff claimed

15

1  that she spent most of her time alone in her room (AR 46), she also
2  testified that she lived with two other people. (AR 456-457.)  While
3  she claimed constant thoughts of suicide (AR 47), she did not report
4  these to Dr. Noyes. (AR 318, 337, 353-386.)

5      Generally, the factors which must be used to evaluate credibility
6  are well known, and are enumerated in the regulations. (See 20 C.F.R.
7  §§404.1529; 416.929; SSR 96-7p.)  These factors were, indeed,
8  considered by the ALJ and are articulated in the Decision. (AR 23-24.)

9      In addition to these factors, the ALJ made specific reference to
10 Plaintiff's demeanor at the hearing, noting that her thoughts "did not
11 seem to wander and all questions were answered alertly and
12 appropriately." (AR 24.)  Plaintiff's demeanor at the hearing is a
13 legitimate factor which the ALJ could rely upon in evaluating her
14 credibility. (See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir.
15 1999).)  Plaintiff concedes that this is a proper factor, although not
16 sufficient in and of itself to determine credibility.  Thus, Plaintiff
17 does not dispute the ALJ's determination that her demeanor at the
18 hearing belied her subjective complaints.

19     For the foregoing reasons, the Court concludes that the ALJ
20 engaged in a proper credibility analysis, relied upon sufficient and
21 appropriate credibility assessment factors, and that the credibility
22 determination is supported by substantial evidence.  There is no error
23 as to Issue No. 4.
24 //
25 //
26 //
27 //
28 //

16

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: October 27, 2009                       /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE